<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MONICA BIRCH-MIN, et al., | : | |
| | : | Civil Action No. 14-476-BRM-DEA |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| MIDDLESEX COUNTY BOARD OF SOCIAL SERVICES, et al., | : | |
| | : | **OPINION** |
| Defendants. | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are the following motions: (1) Defendant Plainsboro Police Department's ("Plainsboro PD") motion for summary judgment (ECF No. 106); (2) Defendant Middlesex County Board of Social Services' ("MCBSS," together with Plainsboro PD, the "Defendants") motion for summary judgment (ECF No. 109)[1]; (3) Plaintiff Monica Birch-Min's ("Plaintiff") cross-motion for summary judgment (ECF No. 110); and (4) Plaintiff's motion to strike Defendants' motions for summary judgment (ECF No. 116). All motions are opposed. (ECF Nos. 114 to 115, 117 to 121.) Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. For the reasons set forth below, Plaintiff's motion to strike is **DENIED**, Defendants' motions for summary judgment are **GRANTED**, and Plaintiff's cross-motion for summary judgment is **DENIED**.

---

[1] For reasons that are unclear to the Court, MCBSS's motion is captioned as a "Motion to Appoint Ad Litem." (*See* ECF No. 109.) The papers make clear, however, MCBSS is, in fact, moving for summary judgment. (*Id.*)

1

## I. BACKGROUND[2]

### A. FACTUAL BACKGROUND

This action arises out of an incident that occurred on January 20, 2012 involving Plaintiff and her husband, Aung Min. (ECF No. 59 at ¶ 10.) Plaintiff alleges Maxine Reid, an MCBSS employee, arrived at Plaintiff's home and "demanded Aug Min come to the door [because] there was an anonymous report that he was in distress." (*Id.*) Shortly thereafter, officers from Plainsboro PD arrived in response to a call for assistance by Ms. Reid. (*Id.*) Plaintiff contends "Aug Min appeared at the door and asked the agent and police officers summoned by Ms. Reid to leave the[ir] residence." (*Id.*) Plaintiff contends the Plainsboro PD refused to leave and, instead, "the officers broke into [P]laintiff's home at 3403 Fox Run Drive, Plainsboro Township, New Jersey, and attacked Aug Min [] in his bed where he was beaten and restrained protesting removal from his home." (*Id.* at ¶ 11.) Additionally, Plaintiff alleges she "was handcuffed and apprehended after attempting to make a formal complaint." (*Id.* at ¶ 12.) The gravamen of Plaintiff's complaint is the allegation she and her husband "were falsely imprisoned against their will and forced to participate in unnecessary medical testing." (*Id.* at ¶ 15.)

Following the events on January 20, 2012, a guardianship proceeding was commenced in the Superior Court of New Jersey, Chancery Division, Probate Part, Middlesex County, bearing Docket Number 235478. (*See* ECF No. 106-1 (MCBSS's Answers to Interrogatories) at 8.) In that action, MCBSS applied for an Order to Show Cause requesting a temporary guardian be appointed for Aung Min. (*Id.*) The Order to Show Cause application included an affidavit of Ms. Reid's observations from January 20, 2012, together with certifications of two of Mr. Min's treating physicians. (*Id.*) The application was granted by the Middlesex County Surrogate, Hon. Frank M.

---

[2] The facts set forth in this Opinion are taken from Plaintiff's Second Amended Complaint (ECF No. 59), the parties' briefs and related filings.

Ciuffani, P.J.Ch., and Gary Ben Cornick, Esq., was named as the temporary guardian of Aung Min and Ann L. Renaud, Esq., appointed as counsel to represent Mr. Min's interests. (*Id*. at 10.) Judge Ciuffani held an initial hearing on March 9, 2012. (*Id*.) Plaintiff appeared *pro se* to contest the guardianship, but was not a party to the matter. (*Id*.) On March 13, 2012, Judge Ciuffani indicated that Aung Min was incapacitated but continued the hearing to determine if Plaintiff could arrange to transport Mr. Min to Monserrat. (*Id*.) On April 13, 2012, Judge Ciuffani executed a Judgement of Incapacity and order Appointing the Public Guardian as the Guardian of Aung Min. (*Id*. at 11.) Judge Ciuffani's April 13, 2012 Order states "Aung Min is an incapacitated person as a result of unsoundness of mind and is incapable of governing himself and managing his affairs and unable to consent to medical treatment." (*Id*. at 45.) After it was determined that Mr. Min could, in fact travel, on June 21, 2012, Judge Ciuffani vacated his April 13, 2012 Order for the express purpose of allowing Aung Min "to be discharged from Roosevelt Care Center and relocate to Monserrat with his wife, Monica Min, with the assistance of a home health aide." (*Id*. at 50.)

### B.  PROCEDURAL BACKGROUND

More than one year later, on January 16, 2014, Plaintiff and Mr. Min commenced this action alleging "defendants' conduct [on January 20, 2012] deprived plaintiffs of life, liberty, and property without due process of law." (ECF No. 1 at ¶ 20.) Thereafter, Plaintiff advised the Court that Mr. Min had passed away on August 18, 2014. (*See* ECF No. 43.) On December 16, 2014, the Estate of Aung Min obtained counsel, Robert Brotman, Esq. (*see* ECF No. 54), and, on April 23, 2015, a Second Amended Complaint was filed pursuant to court Order (*see* ECF Nos. 58, 59).[3]

---

[3] After Mr. Brotman filed a motion to withdraw as counsel, on July 28, 2015, Magistrate Judge Arpert entered an Order: (1) granting Mr. Brotman's motion to withdraw as counsel; (2) confirming that Plaintiff, in her individual capacity, was now proceeding *pro se*; and (3) directing Plaintiff, in her capacity as Executrix of the Estate of Aung Min, to obtain new counsel for the

3

In her Second Amended Complaint, Plaintiff alleges "[e]ach defendant, individually and in concert with the others, acted maliciously, wantonly, unlawfully, willfully, knowingly, and with the specific intent to deprive plaintiffs of . . . rights [] secured to plaintiffs by the Fourth, Sixth, and 14th Amendments to the Constitution of the United States, and by 42 U.S.C.A. §§ 1983, 1988." (*Id*. at ¶ 16.) Plaintiff asserts four causes of action: (1) a survival/wrongful death claim, pursuant to New Jersey's Survivor Act, N.J.S.A. 2A:15-3, *et seq*., and New Jersey's wrongful death statute, N.J.S.A. 2A:31-1, et seq. (ECF No. 59 at ¶¶ 22-25); (2) a *Monell* claim, pursuant to 42 U.S.C. § 1983, alleging MCBSS "established an illegal custom, policy, and practice designed to conspicuously violate . . . due process of law" (*id*. at ¶¶ 26-31); (3) a *Monell* claim against Plainsboro PD, based on the same allegations (*id*. at ¶¶ 32-37); and (4) an apparent conspiracy claim against all "'tortfeasors' who were employed" by any of the defendants and "are intricately involved as operatives . . . with the subject incident . . . or otherwise responsible for maintaining illegal customs, policies, or practices" (*id*. at ¶39).

Defendants now move for summary judgment dismissing the Complaint in its entirety. (ECF Nos. 106, 109.) Plaintiff cross-moves for summary judgment (ECF No. 110) and also moves to strike Defendants' motions for summary judgment (ECF No. 116).

## II.  LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it

---

Estate of Aung Min by August 31, 2015. (ECF No. 76.) Plaintiff failed to obtain new counsel for the Estate of Aung Min, which remains unrepresented to date.

4

has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence

and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

### III. DECISION

#### A. PLAINTIFF'S MOTION TO STRIKE

The Court will first address Plaintiff's "Motion to Strike Defendants['] . . . Motion[s] For Summary Judgment." (ECF No. 116.) Defendants oppose Plaintiff's motion, arguing Plaintiff's "unsupported and baseless assertions . . . in the body of the Motion" are insufficient to justify the relief sought. (ECF No. 118 at 4; ECF No. 119 at 1.) They further argue Rule 12(f) only authorizes a court to strike portions of "pleadings," and not motions. (*Id.*) Even if it did, Defendants argue Plaintiff has not met her burden under Rule 12(f). The Court agrees.

Initially, the Court notes Plaintiff's motion to strike on its face seeks "an order striking Defendant's [sic] Answer in this action pursuant to Fed. R. Civ. P. Rule 12(f)." (*Id.* at 1.) Rule 12(f) provides, in pertinent part, that the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Pursuant to this Rule, "the court may act on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(2).

6

Here, Plainsboro PD and MCBSS filed their Answers to Plaintiff's Second Amended Complaint on April 24, 2015 and April 29, 2015, respectively. (*See* ECF Nos. 60, 61.) Plaintiff's motion to strike, however, was not filed until September 6, 2016, nearly 16 months after being served with Defendants' answers. Thus, on its face, Plaintiff's motion for "an order striking Defendant's [sic] Answer" is untimely under Fed. R Civ. P. 12(f). Insofar as Plaintiff's motion seeks to strike Defendants' motions for summary judgment, Rule 12(f) authorizes no such relief, *see* Fed. R. Civ. P. 12(f) (authorizing courts to "strike from a pleading" certain material, without reference to court's authority to strike "motions"), and Plaintiff's application would still be untimely because it was filed after responding to Firstsource's motion for summary judgment, *see id*. More importantly, however, Plaintiff has not provided any factual or legal authority to support her argument. Indeed, Plaintiff makes no effort to address the requirements of Rule 12(f), and offers no authority to justify an expanded application of Rule 12(f) to a dispositive motion. Even construing Plaintiff's brief liberally, no credible argument was made to support striking either of the Defendants' Answer(s) or summary judgment motion(s). Instead, Plaintiff simply attacks Defendants' factual contentions in their motions, which are arguments that should be raised in an opposition brief (or, as is the case here, a cross-motion) and not a separate motion to strike. Accordingly, Plaintiff's Motion to Strike is **DENIED**.

B. **MOTIONS FOR SUMMARY JUDGMENT**

Defendants raise a number of nearly-identical arguments in support of their motions for summary judgment. (*See* ECF No. 106-2 (Plainsboro PD's Mem.); ECF No. 109-5 (MCBSS's Mem.).) First, Defendants argue Plaintiff's claims relating to the January 20, 2012 removal of Mr. Min from his home are barred by the Supreme Court's decision in *Heck v. Humphry*, 512 U.S. 477 (1994), because New Jersey Superior Court "Judge Ciuffani subsequently entered a Judgment of

7

Incapacity and executed an Order Appointing a Guardian for Aung Min dated April 13, 2012" that has not been invalidated. (ECF No. 106-2 at 1-3; ECF No. 109-5 at 1-3.) Second, Defendants argue summary judgment should be granted in their favor on Plaintiff's § 1983 claim because "Plaintiff has not identified any policy, custom or practice which caused a constitutional violation or identified any policy, custom or practice that [either of the Defendants] failed to enact which caused a violation of Plaintiffs [sic] civil rights." (ECF No. 106-2 at 4; ECF No. 109-5 at 4.) Third, Defendants argue Plaintiff cannot maintain her § 1983 claim because "[t]here are no individuals named as defendants and therefore there are no viable claims." (ECF No. 106-2 at 8; ECF No. 109-5 at 8.) Fourth, Defendants argue that, because probable cause existed to remove Mr. Min from his home, their conduct was not a proximate cause of Plaintiff's alleged constitutional deprivations. (ECF No. 106-2 at 13-18; ECF No. 109-5 at 13-18.) Fifth, Plainsboro PD argues it is entitled to summary judgment because "[p]olice departments may not be sued independently of the municipalities which they serve." (ECF No. 106-2 at 19.) Sixth, Defendants argue their conduct is protected by the doctrine of qualified immunity. (*Id*. at 20-21; ECF No. 109-6 at 19-20.) Next, Defendants argue the Estate of Aung Min cannot proceed *pro se* and Plaintiff is precluded from receiving an award of attorneys' fees because she is *pro se*. (ECF No. 106-2 at 22-24; ECF No. 109-6 at 21-23.) Finally, Defendants argue that punitive damages cannot be awarded to a municipality under § 1983. (ECF No. 106-2 at 25; ECF No. 109-6 at 24.)

Plaintiff cross-moves for summary judgment, arguing Defendants "have not presented a material issue at law that supports the defenses presented in the[ir] answer[s]. . . ." (ECF No. 110-1 (Plf. Mem.) at 3.) The thrust of Plaintiff's argument is that Defendants did not have "the required Court Order signed by a judge before violating Plaintiffs [sic] due process Constitutional Rights on the days of January 20, 24, or 26, 2012." (*Id*.) According to Plaintiff, "this violation was also

8

found in the original case [in] Middlesex County" where the judge found "[t]he actions of the parties was illegal." (*Id*.) Plaintiff contends this "prove[s] that her due process rights were violated indefinitely." (*Id*.) This deprivation allegedly occurred when "all Defendants in concert were abusive against the Mins." (*Id*.) Additionally, Plaintiff contends she "can prove that Defendants [sic] culpability exceeded negligence and deliberate indifference that reaches a level of gross negligence. (*Id*. at 5 (citing *Miller v. City of Philadelphia*, 174 F.3d 368 (3d Cir. 1999)).) Plaintiff suggests "the evidence proves that Mr. Min was misdiagnosed to allow the County officials to exploit Plaintiffs and deprive them of certain rights protected by the Constitution." (*Id*. at 6.) Next, Plaintiff argues "qualified immunity [is] not applicable here because the law was clearly established at the time of the alleged violation, and the court must determine if the officers involved reasonably could have believed the conduct to have been permissible." (*Id*. at 6-7 (citing *Karnes v. Skutski*, 62 F.3d 485, 491 (3d Cir. 1995)).) Finally, Plaintiff argues "even if the Defendants were to have presented a legal defense and did present a genuine issue as to a material fact, they would still be barred by the doctrine of res judicata for the simple fact that the initial proceeding brought by [MCBSS] was unsuccessful." (*Id*. at 9.)

Plaintiff's Complaint asserts four causes of action, all of which depend upon the existence of an allegedly unlawful policy, practice, or custom enacted by either MCBSS and/or Plainsboro PD. Specifically, Plaintiff, "as Executrix of the estate of Aung Min," brings claims pursuant to "New Jersey Survivor's Act, N.J.S.A. 2A:15-3, *et seq*., and a Wrongful Death Action in accordance with N.J.S.A. 2A:31-1, *et seq*., all of which are encompassed in Plaintiffs' claims under 42 U.S.C. [§] 1983." (ECF No. 59 at ¶ 23.) Plaintiff's second and third causes of action are claims under 42 U.S.C. § 1983 against MCBSS and Plainsboro PD, respectively. (*Id*. at ¶¶ 26-27.) These causes of action allege the Defendants "established an illegal custom, policy, and practice designed

9

to conspicuously violate the constitutional rights of Plaintiffs to be free from unreasonable searches and seizures and to enjoy the rights accorded by due process of law." (*Id*. at ¶¶ 27, 33.) Finally, Plaintiff's fourth cause of action is asserted against "DOES 1 through 100" whom Plaintiff "broadly describe[s] as 'tortfeasors' who were employed as agents, servants, employees, officers or independent contractors [of the Defendants] . . . and are intricately involved as operatives, either directly with the subject incident, or in establishing, implementing, ratifying, or otherwise responsible for maintaining illegal customs, policies, or practices." (*Id*. at ¶ 39.) Thus, at a minimum, all of Plaintiff's claims depend on the existence of an alleged "illegal custom, policy or practice." But Plaintiff has failed to offer the slightest shred of evidence to support her contention that such a custom, policy, or practice exists.

In *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978), the United States Supreme Court held that "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. *Id*. at 690. Additionally, the Court explained, "local governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decisionmaking channels." *Id*. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)) ("Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law."). "On the other hand, the language of § 1983 . . . compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id*.

Thus, the Supreme Court "conclude[d] that a municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.*; *see also Montgomery v. DeSimone*, 159 F.3d 120, 126-27 (3d Cir. 1998 ("Under 42 U.S.C. § 1983, municipal defendants cannot be held liable under a theory of *respondeat superior*; municipal liability only arises when a constitutional deprivation results from an official custom or policy.").

Plaintiff's claims against the municipal defendants rest on the allegations that an "illegal policy was in existence and manifested as follows: a) An official with final decision-making authority ratified the illegal policy and/or actions[;] b) There existed a policy of inadequate training or supervision[; and] c) The existence of a custom or tolerance or acquiescence of federal rights violations." (ECF No. 59 at ¶¶ 27, 33.) To the extent these claims are based upon a *respondeat superior* theory (such as Plaintiff's fourth cause of action asserted against "'tortfeasors' who were employed by" one of the Defendants), they are barred under *Monell*. 436 U.S. at 690; *see also DeSimone*, 159 F.3d at 126.

"Furthermore, a municipality's failure to train police officers only gives rise to a constitutional violation when that failure amounts to deliberate indifference to the rights of persons with whom the police come into contact." *DeSimone*, 159 F.3d at 126-27 (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). The Third Circuit has also "held that a failure to train, discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate. *Id.* at 127 (citing *Bonenberger v. Plymouth Township*, 132 F.3d 20, 25 (3d Cir. 1997)). Here, however, Plaintiff's

11

failure to train claim is based on the conclusory and unsupported contention that Plainsboro PD and MCBSS never trained any of their employees not to "conspicuously violate the constitutional rights of Plaintiffs to be free from unreasonable searches and seizures and to enjoy the rights accorded by due process of law." (ECF No. 59 at ¶¶ 27, 33.) Plaintiff, however, points to no inadequacy in either Plainsboro PD's or MCBSS's training program or any evidence to suggest their training programs are, in fact, inadequate (*e.g.*, a history of similar conduct). Plaintiff also fails to allege any action or inaction by either of the Defendants that could be interpreted as encouraging the allegedly offensive actions. Finally, Plaintiff has not even identified the "official" who allegedly ratified the complained of policy. "Mere speculation about the possibility of existence of such facts does not entitle [Plaintiff] to go to trial." *Development Group, LLC v. Franklin Township Board of Supervisors*, 162 F. App'x 158, 160 (3d Cir. 2006); *see also DeSimone*, 159 F.3d at 127 ("Because [plaintiff]'s allegations do not implicate the type of deliberate indifference required for section 1983 municipal liability, the district court was correct in granting summary judgment in favor of the municipal defendants on [plaintiff]'s section 1983 claims.").

Plaintiff has offered no evidence whatsoever to support her contention that either Plainsboro PD or MCBSS had established an unlawful official custom or policy. Indeed, Plaintiff has failed to even identify such a custom or practice. Nor has Plaintiff offered any evidence to suggest the events of January 20, 2012 occurred because any individual was acting pursuant to such a policy or was the result of any alleged failure to train. To the contrary, even when viewed in the light most favorable to Plaintiff and drawing all inferences in her favor, the evidence establishes only that MCBSS was investigating a complaint concerning the health and well-being of Mr. Aung Min and requested assistance from Plainsboro PD to ensure they complied with their

statutory and other legal obligations. In fact, the Superior Court of New Jersey ultimately determined Mr. Min could not care for himself or make decisions about his medical care, which demonstrate Defendants' actions on January 20, 2012 were objectively reasonable.[4] *See Brower v. County of Inyo*, 489 U.S. 593, 599 (1989) ("'Seizure' alone is not enough for § 1983 liability; the seizure must be 'unreasonable.'"). In short, Plaintiff's allegations simply "do not implicate the type of deliberate indifference required for section 1983 municipal liability." *DeSimone*, 159 F.3d at 127; *see also Martinez v. State of Cal.*, 444 U.S. 277, 285 (1980) ("Although a § 1983 claim has been described as 'a species of tort liability,' it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute.").

Because Plaintiff has not presented any evidence to support her contention that Plainsboro PD and/or MCBSS had in place any unlawful policy, practice, or custom, or that the events of January 20, 2012 were in any way related to such an alleged policy, practice, or custom, Defendants' motions for summary judgment is **GRANTED** and Plaintiff's cross-motion for summary judgment is **DENIED**.

---

[4] Plaintiff's contention "that even if the Defendants were to have presented a legal defense and did present a genuine issue as to material fact, they would still be barred by the doctrine of res judicata for the simple fact that the initial proceeding brought by [MCBSS] was unsuccessful" (ECF No. 110-1 at 9) is both a distortion of the facts and, in all events, entirely misplaced. First, there was nothing "unsuccessful" about MCBSS's position in the Superior Court case. Second, and more importantly, Plaintiff was not a party to the guardianship action, nor was Plainsboro PD. Therefore, as it relates to the guardianship action, the doctrine of res judicata cannot be asserted by Plaintiff or against Plainsboro PD.

**IV.     CONCLUSION**

For the reasons set forth above, Plaintiff's Motion to Strike (ECF No. 116) is **DENIED,** Defendants' Motions for Summary Judgment (ECF Nos. 106 and 109) are **GRANTED**, and Plaintiff's Cross-Motion for Summary Judgment (ECF No. 110) is **DENIED**. An appropriate Order will follow.

**Date: March 16, 2017**                              */s/ Brian R. Martinotti*_____
                                                                           **HON. BRIAN R. MARTINOTTI**
                                                                           **UNITED STATES DISTRICT JUDGE**